UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM AND AVE BORTZ,<br><br>  Plaintiffs,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.; SHAWNA BROWN; ARCHIE ALVARADO; JOEL PETRIASHVIL-REYES; MICHELLE MARTINEZ; ARNIE SINGSON; BRIAN CRUZ; and DOES 1–50, inclusive,<br><br>  Defendants. | Case No.: 21-CV-618 TWR (DEB)<br><br>**ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT, AND**<br>**(2) DISMISSING WITH PREJUDICE PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>(ECF No. 16) |

Presently before the Court is the Motion to Dismiss Plaintiffs' First Amended Complaint ("Mot.," ECF No. 16) filed by Defendants JPMorgan Chase Bank, N.A. ("Chase"); Shauna Brown (erroneously named as Shawna Brown); Archie Alvarado; Joel Petriashvili-Reyes (erroneously named as Joel Petriashvil-Reyes); Michele Martinez (erroneously named as Michelle Martinez); Arnie Singson; and Brian Cruz, as well as Plaintiffs William and Ave Bortz's Opposition to ("Opp'n," ECF No. 20) and Defendants' Reply in Support of ("Reply," ECF No. 21) the Motion.  The Court held a hearing on April 6, 2022.  (*See generally* ECF No. 22.)  Having carefully reviewed Plaintiffs' First

Amended Complaint ("FAC," ECF No. 15), the Parties' arguments, and the law, the Court **GRANTS** Defendants' Motion.

## BACKGROUND[1]

### I.  Plaintiffs' Experience with the Scam

At the time of the transactions that are subject of their First Amended Complaint, Plaintiffs William and Ave Bortz were 76 and 77 years old, respectively. (*See* FAC ¶¶ 1–2.) Plaintiffs have been banking with Defendant Chase since approximately 1971. (*See id*. ¶ 23.) During those 49 years, Plaintiffs had never wired "extraordinarily large sums of money" to foreign countries. (*See id*. ¶ 24.)

On January 20, 2021, scammers took over Plaintiffs' bank accounts and directed Mr. Bortz to go to a Chase branch located at 7176 Avenida Encinas, Carlsbad, California 92011 (the "Encinas branch"), (*see id*. ¶ 26), which is managed by Defendant Brown. At the scammers' instruction, Mr. Bortz kept them on the phone at the bank. (*See id*.) The scammers "groomed" Mr. Bortz to answer questions related to his wire transfer, including whether he knew the recipients. (*See id*.) As instructed by Mr. Bortz, Defendant Alvarado wired $198,000 to a Standard Chartered Bank (Hong Kong) Limited ("SCHK") account belonging to "eshamuddin." (*See id*.) After Defendant Alvarado processed the wire transfer, Chase charged Plaintiff's account a $50 wire transfer fee, and Defendants Alvarado and Brown asked Mr. Bortz to become a client of Chase's private banking service. (*See id*.)

At the scammers' behest, Mr. Bortz made three additional wire transfers. (*See id*. ¶¶ 27–29.) Each time Mr. Bortz requested a transfer, he did so after the scammers had doctored Plaintiffs' online accounts and advised him that his transfer had not gone through. (*See id*.) First, on January 22, 2021, Mr. Bortz returned to the Encinas branch as directed by the scammers. (*See id*. ¶ 27.) At Mr. Bortz's request, Defendant Petriashvil-Reyes

---

[1] For purposes of Defendants' Motion, the facts alleged in Plaintiffs' First Amended Complaint are accepted as true. *See Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").

wired another $197,850 to a SCHK account belonging to "Boloy Analizo Jono." (*See id.*) Second, on January 26, 2021, the scammers sent Mr. Bortz to another Chase branch located in Poway (the "Poway branch"), where Defendant Martinez wired $197,500 to a SCHK account belonging to "Tunit Rustiyawali," as directed by Mr. Bortz. (*See id.* ¶ 28.) Finally, on January 28, 2021, after the scammers instructed Mr. Bortz to return to the Poway branch, Defendant Singson wired $97,500 to a SCHK account belonging to "eshamuddin" at Mr. Bortz's request. (*See id.* ¶ 29.) After each individual defendant processed the respective wire transfer, Chase charged Plaintiff's account a $50 wire transfer fee. (*See id.* ¶¶ 27–29.) Then, each of the individual defendants, at times along with bank manager Defendant Brown, also asked Mr. Bortz to become a client of Chase's private banking service. (*See id.*)

On January 28, 2021, Plaintiffs' daughter, Ave Williams, learned of the wire transfers and drove her parents to the nearest Chase branch, located at 16861 Bernardo Center Drive, San Diego, California 92128 (the "Rancho Bernardo branch"). (*See id.* ¶ 30.) Defendant Cruz, Vice-President and Branch Manager of the Rancho Bernardo branch, advised Ms. Williams that "the only thing Chase Bank could do was contact the wires department in New York but that he could not do that until the next day when they opened." (*See id.*) Defendant Cruz took no affirmative actions to reverse the pending wire transfers or to contact Chase's fraud department. (*See id.*) On February 2, 2021, Ms. Williams attempted to contact Defendant Chase's fraud department, and a Chase representative "told Ms. Williams that he would send the issue to JP Morgan Chase Bank's dispute department." (*See id.* ¶ 33.) The funds were never recovered. (*See id.* ¶ 54.)

## II.   Procedural History

On March 4, 2021, Plaintiffs initiated this action in the Superior Court for the State of California, County of San Diego, alleging two causes of action against all Defendants for (1) financial elder abuse pursuant to subsection (a)(2) of California Welfare and Institutions Code § 15610.30 (the "California Elder Abuse Law"), and (2) negligence. (*See generally* ECF No. 1.) Defendants removed to this Court on April 9, 2021, on the grounds

that this Court has original jurisdiction pursuant to the Edge Act, 12 U.S.C. § 632.2. (*See generally id*.) Defendants moved to dismiss on April 26, 2021, (*see generally* ECF No. 5), and this action was transferred to the undersigned on September 30, 2021. (*See generally* ECF No. 11.)

The Court granted Defendant's motion and dismissed without prejudice Plaintiffs' complaint on October 15, 2021. (*See* ECF No. 12.) Specifically, the Court dismissed Plaintiffs' financial elder abuse claim for failure adequately to plead that Defendants had actual knowledge of the scam pursuant to California Welfare and Institutions Code § 15610.30(a)(2), (*see id*. at 7–8), and dismissed without prejudice Plaintiffs' negligence claim because Plaintiffs did not oppose dismissal but requested leave to amend to allege a new cause of action for breach of contract. (*See id*. at 9–10.) The Court granted leave to amend, (*see id*. at 10–11), and the operative First Amended Complaint followed on November 12, 2021. (*See generally* ECF No. 15.)

Plaintiffs' First Amended Complaint alleges three causes of action: (1) financial elder abuse under subsections (a)(1) and (a)(2) of the California Elder Abuse Law; (2) unlawful, unfair, and/or fraudulent practices pursuant to California Business & Professions Code § 17200 (the "Unfair Competition Law" or "UCL"); and (3) breach of the implied covenant of good faith and fair dealing. (*See generally id.*) Defendants filed the instant Motion on December 3, 2021. (*See generally* ECF No. 16.)

## LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"Rule 9(b) requires that, when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct. . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* (internal quotation marks omitted) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

/ / /

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

## ANALYSIS

Defendants seek dismissal of each of Plaintiffs' causes of action with prejudice. (*See* ECF No. 16-1 ("Mem.") at 10, 28.) The Court addresses each in turn.

### I. First Cause of Action: Financial Elder Abuse

Financial abuse of an elder, defined as "any person residing in this state, 65 years of age or older," *see* Cal. Welf. & Inst. Code § 15610.27, occurs in three circumstances: (1) when a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder . . . for a wrongful use or with intent to defraud, or both," Cal. Welf. & Inst. Code § 15610.30(a)(1); (2) when a person or entity "[a]ssists" in the aforementioned conduct "for a wrongful use or with intent to defraud, or both," Cal. Welf. & Inst. Code § 15610.30(a)(2); or (3) when a person or entity commits either of the above actions "by undue influence." Cal. Welf. & Inst. Code § 15610.30(a)(3). "[W]rongful use" encompasses when a person or entity "knew or should have known that [its] conduct is likely to be harmful to the elder," Cal. Welf. & Inst. Code § 15610.30(b), and "undue influence" is defined as "excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and results in inequity," which entails consideration of "[t]he vulnerability of the victim," "[t]he influencer's apparent authority," "[t]he actions or tactics used by the influencer," and "[t]he equity of the result." *See* Cal. Welf. & Inst. Code § 15610.70(a).

In their first cause of action, Plaintiffs' First Amended Complaint alleges violations of subsections (a)(1) and (a)(2) of the California Elder Abuse Law. (*See* FAC ¶¶ 39–50.)

Plaintiffs also argued at the hearing that Defendants violated subsection (a)(3) of the California Elder Abuse Law. (*See* Apr. 6, 2022 Hr'g Tr. at 17:6–9.) Consequently, Plaintiffs contend that Defendants committed financial abuse (1) pursuant to subsection (a)(1) by (a) "directly taking" a $50 service fee in conjunction with each of the four wire transfers, (*see* FAC ¶¶ 26–29, 47), and (b) taking with the intent to defraud or for a wrongful use Plaintiffs' wire transfers totaling $690,500, (*see* Apr. 6, 2022 Hr'g Tr. at 16:9–17:9); (2) pursuant to subsection (a)(2) by assisting the scammers in processing the four wire transfers, (*see* FAC ¶¶ 15–16, 18, 20, 22, 26–29, 35–36, 42–43, 45–47); and (3) pursuant to subsection (a)(3) by taking by undue influence Plaintiffs' $690,500. (*See* Apr. 6, 2022 Hr'g Tr. at 17:6–9.)

## A.   § 15610.30(a)(1)

### 1.   The Service Fees

Plaintiffs allege that Chase's collection of a $50 processing fee per wire transfer deprived Plaintiffs of their property pursuant to subsection (a)(1). (*See* FAC ¶¶ 26–29, 47; *see also* Opp'n at 10.) Defendants contend that the "fully-disclosed," "customary processing fee . . . to which Plaintiffs agreed in writing . . . does not support a claim of direct elder abuse" because Plaintiffs do not allege that Chase collected the fees with the "intent to defraud" or for "wrongful use," as is required by the statute. (*See* Mem. at 17.)

"[U]nder subdivision (b) of § 15610.30, wrongful conduct occurs only when the [defendant] . . . actually knows that it is engaging in a harmful breach, or reasonably should be aware of the harmful breach." *Paslay v. State Farm Gen. Ins. Co.*, 248 Cal. App. 4th 639, 658 (2016). Although Plaintiffs allege in a conclusory fashion that Chase's collection of processing fees constituted wrongful use because "Chase Bank openly shirked their professional responsibilities to their elderly customers,"[2] (*see* FAC ¶ 35), Plaintiffs provide no factual allegations in support. (*See generally id.*; *see also generally* Opp'n.) Rather, to

---

[2] In drawing this conclusion, Plaintiffs appear to quote (without citing) *Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132 (N.D. Cal. 2021), which Defendants rely on heavily. (*See* Mem. at 12, 18, 20–21; Reply at 3–4, 6–7, 10.)

the extent that Plaintiffs plead wrongful use, they conflate the reasonably discernible harm that resulted from the depletion of Plaintiffs' "life savings," (*see* FAC ¶ 15); *see also Paslay*, 248 Cal. App. 4th at 658, and the alleged harm relevant to this claim—the collection of $200 in processing fees. (*Cf.* FAC ¶ 46 ("Defendants committed financial abuse of Plaintiffs by directly taking and retaining wire fees from Plaintiff[s] each time in the process[,]" without specifying what, if any, harm resulted from the processing fees).) Instead, Plaintiffs plead that Defendants "knew or should have known their conduct would be harmful to Plaintiffs" because of the "significant risks involved" and "the outrageous pillaging of [Plaintiffs'] financial security" when "they lost almost $700,000.00." (*See id.* ¶¶ 46–48.) Consequently, Plaintiffs fail to plead that the collection of the processing fees—as opposed to the wire transfers themselves—imposed a harm. *See Kearns*, 567 F.3d at 1124 (recognizing that plaintiffs who aver fraud must meet Rule 9(b)'s heightened pleading standard and "state with particularity the circumstances constituting fraud") (internal citations omitted).

Further, although Plaintiffs plead this cause of action against all Defendants (*see* FAC ¶¶ 46–47), Plaintiffs allege that "Defendant Chase" (not the individual defendants) took the processing fees. (*See id.* ¶¶ 26–29 ("[T]o effectuate the scam, Chase Bank charged Plaintiff $50 for a wire transfer fee[,] which was directly taken from Plaintiffs' account by Chase Bank.").) "Rule 9(b) does not allow a complaint to . . . lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (alteration in original) (internal quotation marks omitted) (quoting *Cisneros v. Instant Cap. Funding Grp., Inc.*, 263 F.R.D. 595, 606–07 (E.D. Cal. 2009)). Here, although Plaintiffs appear to attribute the actual taking of service fees to Defendant Chase only, the First Amended Complaint fails to meet the pleading standard because it lumps Defendants together in a conclusory fashion, (*see* FAC ¶¶ 46–47 ("Defendants, and each of them, [] committed financial abuse of Plaintiffs by directly taking and retaining wire fees")), without pleading with any

///

particularity each individual Defendant's involvement. *See Destfino*, 630 F.3d at 958; *see also* Fed. R. Civ. P. 9(b).

Despite Plaintiffs' allegation that Defendants "effectuate[d] the scam" through the collection of processing fees, (*see* FAC ¶¶ 26–29, 46–47), the Court concludes that the $50 processing fees do not constitute direct takings under § 15610.30(a)(1) because Plaintiffs fail to plead with any particularity that Defendants actually knew that taking $50 fees was likely to be harmful to Plaintiffs or that Defendants did so with the intent to defraud Plaintiffs. *See Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 745 (2010); *see also* Cal. Welf. & Inst. §§ 15610.30(a)(1), (b).

### 2. The Wire Transfers

Plaintiffs also argued at the hearing that the wire transfers constituted a direct taking. (*See* Apr. 6, 2022 Hr'g Tr. at 16:9–17:9; *see generally* FAC ¶¶ 16, 26–29, 35, 43, 45–47) ("[Plaintiffs], with the substantial *assistance* and knowledge of [Defendants], sent an extraordinarily large wire transfer;" "[Defendants were] *assisting* financial abuse . . . execut[ing] [four] extraordinarily large wire transfers of money to bank accounts in China;" "[Defendants] knowingly *assisted* the scammers' financial abuse of William and Ave by executing four [] wire transfers totaling $690,500.00;" "Defendants *assisted* in taking Plaintiffs' property . . . at the time of the transfers") (emphasis added). Plaintiffs, however, fail to allege that Defendants "[took], secrete[d], appropriate[d], obtain[ed], or retain[ed]" Plaintiffs' wire transfers. *See* Cal. Welf. & Inst. § 15610.30(a)(1).

Plaintiffs argue that because Chase held Plaintiffs' funds in their personal account and processed transactions on their behalf, that Defendants, (*see* Apr. 6, 2022 Hr'g Tr. at 24:15–24 (lumping Defendants together without differentiating allegations)), committed a direct taking. (*See id*. at 16:16–17:2.) By contrast, Plaintiffs' factual allegations show that Mr. Bortz initiated the transfers, the third-party scammers obtained the funds, and Chase merely processed the transactions. (*See, e.g.*, FAC ¶ 25 ("William began sending William and Ave's money to the . . . scammers. . . . Chase Bank processed those [four] wire transfers through William and Ave's JP Morgan Chase Bank accounts to China.") Despite

Plaintiffs' emphasis of Chase's "custodial relationship" with the accountholders, (*see* Apr. 6, 2022 Hr'g Tr. at 16:21–17:2), it is the taking of property, not the account's maintenance or processes, that is at issue. *See* Cal. Welf. & Inst. § 15610.30(a)(1).  Because it was the third-party scammers who actually took, secreted, appropriated, obtained, or retained the alleged $690,500 from the four wire transfers, while Defendants merely processed the transactions, (*see* FAC ¶¶ 25–29), Defendants did not commit a direct taking.

Because the Court concludes that Plaintiffs have failed to allege that Defendant "[took], secrete[d], appropriate[d], obtain[ed], or retain[ed]" either the $50 processing fees or Plaintiffs' wire transfers "for a wrongful use or with intent to defraud," the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiffs' first cause of action under § 15610.30(a)(1).

### B.   § 15610.30(a)(2)

Plaintiffs also claim that Defendants assisted in the third-party scammers' financial elder abuse pursuant to subsection (a)(2) when Defendants processed four substantial wire transfers to foreign accounts.  (*See* FAC ¶¶ 15–16, 18, 20, 22, 26–29, 35–36, 42–43, 45–47.)  Defendants argue that Plaintiffs' First Amended Complaint—which adds only one new factual allegation, namely, that Defendants were "mandated reporters," (*see id.* ¶¶ 12, 19)—fails to allege that Defendants had actual knowledge of the scam.  (*See* Mem. at 18–20.)  Plaintiffs counter that the legislative intent regarding § 15610.30(a)(2) "does **not** require the 'assister' have actual knowledge of the third[-]party scammer's wrongful conduct."  (*See* Opp'n at 12–16 (emphasis in original).)

In its Order dismissing Plaintiffs' original Complaint, (*see* ECF No. 12 at 6 (quoting *Das*, 186 Cal. App. 4th at 744–45)), the Court explained that California law uses an aiding and abetting standard to determine liability for assisting financial elder abuse.  That standard requires Plaintiffs to plead Defendants' actual knowledge of the third-party's wrongful conduct.  *See Das*, 186 Cal. App. 4th at 744–45; *see also Paskenta Band of Nomalki Indians v. Umpqua Bank*, 846 F. App'x 589, 590 (9th Cir. 2021) ("[A]ctual knowledge is required to establish an aiding and abetting claim." (first citing *Das*, 186 Cal.

App. 4th at 745; then citing *Chavez v. United States*, 683 F.3d 1102, 1108–10 (9th Cir. 2012))).  In other words, constructive knowledge of the underlying fraud does not suffice to establish the requisite actual knowledge.  *See, e.g.*, *Mackintosh v. JPMorgan Chase Bank*, No. 18-cv-03348-SK, 2018 WL 3913791, at *3 (N.D. Cal. July 13, 2018).

"Generally, constructive knowledge, means knowledge that one . . . *should* have . . . ranging from one who is deliberately indifferent . . . to one who merely *should* know of a dangerous condition." *Paslay*, 248 Cal. App. 4th at 657 (internal quotation marks and citations omitted) (emphasis added).  Here, Plaintiffs allege that Defendants had actual knowledge that Plaintiffs were elders and that their multiple, substantial transfers to foreign countries "constituted a profound change in their banking pattern," (*see* FAC ¶¶ 34–35, 43), which together *should* have cued Defendants to the "well[-]known problem" of financial elder abuse that is (1) documented in the U.S. Department of Treasury's 2011 advisory regarding "signs of abuse," (*see id.*), and the Board of Governors of the Federal Reserve System's "Interagency Guidance on Privacy Laws and Reporting Financial Abuse of Older Adults," (*see id*. ¶¶ 12–14); (2) guided by national reporting requirements that call for higher scrutiny of transactions exceeding $10,000, (*see id*. ¶¶ 16, 36); and (3) embedded in a bank employee's role as a mandatory reporter of financial exploitation under California law.  (*See id*. ¶¶ 12, 19) (citing Cal. Welf. & Inst. Code § 15630.1).)  These are textbook allegations of constructive knowledge, which does not suffice to establish liability.  *See, e.g.*, *Mackintosh*, 2018 WL 3913791, at *3.

Because Plaintiffs' allegations that Defendants should have known about the underlying scam fall short of the requisite actual knowledge, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiffs' first cause of action under § 15610.30(a)(2).

### C.  *§ 15610.30(a)(3)*

Plaintiffs argued for the first time at the hearing that Defendants took "by undue influence" Plaintiffs' $690,500 in wire transfers pursuant to subsection (a)(3). (*See* Apr. 6, 2022 Hr'g Tr. at 17:6–9.)  Plaintiffs, however, fail to plead "undue influence" as defined

in § 15610.70 with any particularity. (*See generally* FAC.) In any event, because Plaintiffs fail to allege that Defendants directly "[took], secrete[d], appropriate[d], obtain[ed], or retain[ed], or assist[ed] in taking, secreting, appropriating, obtaining, or retaining," the wire transfers, *see supra* Sections I.A.2, I.B, Defendants' processing of the transactions also does not constitute a taking under § 15610.30(a)(3). *See* Cal. Welf. & Inst. § 15610.30(a)(3). The Court therefore **DISMISSES** Plaintiffs' first cause of action under subsection (a)(3) of the California Elder Abuse Law.

## II.  Second Cause of Action: Unfair Competition Law

Plaintiffs' second cause of action alleges that Defendants violated California's UCL because (1) their "taking" and "assisting" was unlawful in violation of the California Elder Abuse Law, and (2) their "fail[ure] to credit Plaintiffs' accounts the amount of the money . . . [,] which may have been acquired by unfair, unlawful, and/or fraudulent business practices," violated California Welfare & Institutions Code § 15657.6. (*See* FAC ¶¶ 51–58.)

First, although Plaintiffs contend that a cause of action under California Welfare & Institutions Code § 15657.5 "indisputably may serve as a predicate violation for a UCL claim," (*see* Opp'n at 18 (citing *Rand v. Am. Nat'l. Ins. Co.*, No. CV 09-0639-SI, 2009 U.S. Dist. LEXIS 64781, at *12 (N.D. Cal. July 27, 2009))), they concede that their UCL cause of action is dependent on the financial elder abuse cause of action. (*See id.* at 19.) Because Plaintiffs fail to plead sufficiently a violation of the California Elder Abuse statute, *see supra* Section I, their UCL cause of action must also fail.

Second, to the extent that Plaintiffs plead a UCL cause of action predicated on Defendants' allegedly fraudulent business practices, they fail to "state with particularity the circumstances constituting fraud" in support of their claim. *See Kearns*, 567 F.3d at 1124 (quoting Fed. R. Civ. P. 9(b)). Not only are Plaintiffs' allegations of fraudulent business practices conclusory, (*see* FAC ¶ 57), but Plaintiffs also abandon the "fraudulent" claim in their Opposition. (*See generally* Opp'n at 18–20; *see also* Reply at 9.)

/ / /

Ultimately, because Plaintiffs' second cause of action is predicated on their first cause of action for financial elder abuse, their UCL causes of action necessarily fail. Plaintiffs also fail to plead sufficient facts to support their abandoned "fraudulent" claim under the UCL.  The Court therefore **GRANTS** Defendants' Motion and **DISMISSES** Plaintiffs' second cause of action under the UCL.

### III. Third Cause of Action: Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs' third cause of action is for breach of the implied covenant of good faith and fair dealing.  (*See* FAC ¶¶ 59–65.)  Specifically, Plaintiffs allege that Defendants' failure to "fulfill [their] obligations . . . under the account agreement" constitutes breach.  (*See id*. ¶ 64.)  Plaintiffs allege that Defendants' own fraud monitoring policies and their reporting requirements pursuant to California Welfare and Institutions Code § 15630.1 required them to protect Plaintiffs and prevent financial elder abuse.  (*See id*.)

Defendants respond that, because Plaintiffs allege an "improperly accepted and executed [] funds transfer," the claim for breach of the implied covenant is displaced by California's Uniform Commercial Code ("UCC").  (*See* Mem. at 24–25 (citing *Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 244 (2007).)  Though the Court agrees that the UCC displaces common law claims where "the UCC's provisions squarely cover the transactions at issue," *see Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, No. 19-CV-02778-TSH, 2019 WL 3503109, at *3 (N.D. Cal. Aug. 1, 2019) (citing *Zengen*, 41 Cal. 4th at 253–54), the Court also recognizes that the UCC does not preempt claims based on "misconduct outside the wire transfer process."  *See Barrett v. JP Morgan Chase Bank*, No. 14-CV-2976-DMS WVG, 2015 WL 631652, at *3–4 n.3 (S.D. Cal. Feb. 13, 2015).

Plaintiffs' failure to address Defendants' arguments on this point, however, "constitutes abandonment of the claim," *see Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014), permitting the Court to grant Defendants' Motion as to Plaintiffs' third cause of action without reaching the merits.  "In instances where a plaintiff simply fails to address a particular claim in its opposition to a motion to dismiss that claim, courts

generally dismiss it with prejudice." *Homsy v. Bank of Am., N.A.*, No. C 13-01608 LB, 2013 WL 2422781, at *5 (N.D. Cal. June 3, 2013) (citing *In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2012 WL 2119193, at *3 (N.D. Cal. June 11, 2012)); *see also Shull v. Ocwen Loan Servicing, LLC*, No. 13-CV-2999-BEN WVG, 2014 WL 1404877, at *2 (S.D. Cal. Apr. 10, 2014) ("Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate." (citing *Silva v. U.S. Bancorp*, No. 5:10-cv-1854, 2011 WL 7096576, at *3 (C.D. Cal. Oct.6, 2011))); *cf. Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (per curiam) (noting that the plaintiff had abandoned claims below by failing to raise them in her opposition to the defendant's motion for summary judgment).

At the motion hearing on April 6, 2022, Mr. Steele, on behalf of Plaintiffs, submitted that although Plaintiffs had "not intend[ed] to abandon the claim," they had made a tactical decision not to respond to Defendants' arguments in their Motion regarding the third cause of action. (*See* Apr. 6, 2022 Hr'g Tr. at 2:16–3:11.) Conceding that their UCL and breach of the implied covenant claims "need[ed] that [financial elder abuse violation] predicate in order for them to be valid," Mr. Steele explained that he was "limited in the amount of pages that [he] must address, so it's tactical to the point that [he] had to spend [his] time and [his] page limitations on what [he] thought was the more critical issue." (*See id*. at 2:23–3:2.) Mr. Steele, however, used only sixteen of the twenty-five pages afforded to him for his Opposition pursuant to Civil Local Rule 7.1(h). (*See generally* Opp'n.) This belies Mr. Steele's contention that Plaintiffs did not intend to abandon their third cause of action.

The Court therefore concludes that Plaintiffs abandoned the third cause of action. Accordingly, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiffs' third cause of action.

IV. **Leave to Amend**

Plaintiffs do not request leave to amend, (*see generally* FAC; Opp'n), and Defendants claim that amendment would be futile. (*See* Mem. at 27–28; Reply at 11.) Though the standard for granting leave to amend is generous, *see United States v.*

*Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (internal citations omitted); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."), "leave to amend is not to be granted automatically." *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990).

Courts are to consider five factors in assessing the appropriateness of leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *See Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Here, there is no evidence of delay, prejudice, or bad faith, so whether leave to amend should be granted turns entirely on Plaintiffs' previous amendments and whether further amendment would be futile. *See id*. Amendment is futile when "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *See DeSoto*, 957 F.2d at 658 (quoting *Schreiber*, 806 F.2d at 1401).

Although Plaintiffs amended their complaint to allege that Chase's service fees constituted a taking under the California Elder Abuse Law, they failed to plead with particularity that Chase collected the $200 in fees with the "intent to defraud" or for "wrongful use." *See* Cal. Welf. & Inst. §§ 15610.30(a)(1), (b); *see also Kearns*, 567 F.3d at 1124 (citing Fed. R. Civ. P. 9(b)). For the same reasons, Plaintiffs' new claims—alleged for the first time at oral argument—that Defendants took the $690,500 in wire transfers with the "intent to defraud," for a "wrongful use," or by "undue influence" also fail to meet the pleading standards. *See* Cal. Welf. & Inst. §§ 15610.30(a)(1), (a)(3), (b); *see also* Fed. R. Civ. P. 9(b). Though given the opportunity to plead additional facts, Plaintiffs failed to add allegations in line with the Court's previous Order, which explained that "assisting" under the California Elder Abuse Law requires Plaintiffs to plead actual knowledge. (*See* ECF No. 12 at 6 (citing *Das*, 186 Cal. App. 4th at 744–450). Consequently, amendment of the financial elder abuse claim would be futile. *See Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1054 (9th Cir. 2006) ("Futility of amendment may be shown by [p]laintiff's failure to plead additional facts when given the opportunity."). Because Plaintiffs do not—

and, it appears, cannot—allege additional facts to cure the deficiency, leave to amend is inappropriate. *See DeSoto*, 957 F.2d at 658 (quoting *Schreiber*, 806 F.2d at 1401).

Given that Plaintiffs can plead no additional facts to cure the underlying claim's defects, amendment as to the remaining causes of action, which are predicated on the financial elder abuse claim, is likewise futile. Finally, Plaintiffs abandoned both the second cause of action under the fraudulent prong of the UCL and third cause of action for breach of the implied covenant of good faith and fair dealing. (*See generally* Opp'n.) Accordingly, dismissal with prejudice is appropriate as to both remaining claims. *See, e.g.*, *Homsy*, 2013 WL 2422781, at *5 (internal citation omitted). The Court therefore **DENIES** Plaintiffs leave to amend.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' Motion (ECF No. 16) and **DISMISSES WITH PREJUDICE** the First Amended Complaint in its entirety. The Clerk of the Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: May 10, 2022

_____
Honorable Todd W. Robinson
United States District Court